IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NANCY LANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21-cv-6290 |
| v. | ) |
| | ) District Judge Franklin U. Valderrama |
| COLONIAL PENN LIFE INSURANCE | ) |
| COMPANY, | ) Magistrate Judge Jeffrey I. Cummings |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On April 19, 2021, plaintiff Nancy Lang filed a putative class action lawsuit against defendant, Colonial Penn Life Insurance Company ("Colonial Penn"), in the United States District Court for the Northern District of Florida. Lang alleges that she and other unidentified members of the National Do Not Call Registry (the "DNC Registry") received unsolicited and unwanted phone calls marketing Colonial Penn insurance products, in violation of the Telephone Consumer Protection Act (the "TCPA"). *See Lang v. Colonial Penn Life Ins. Co.*, No. 4:21-cv-00165 (N.D.Fla). On October 22, 2021, Lang subpoenaed a third party, Bankers Life and Casualty Company ("Bankers Life"), to produce a witness knowledgeable on seven topics of testimony pursuant to Federal Rule of Civil Procedure 30(b)(6). Before the Court is Bankers Life's motion to quash the Rule 30(b)(6) subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3). (Dckt. #1). For the reasons set forth below, the Court grants Bankers Life's motion to quash in part, denies it in part, and modifies the scope of Lang's subpoena to eliminate any undue burden that it might otherwise impose on Bankers Life.

1

I.      BACKGROUND

Both Bankers Life and Colonial Penn are wholly owned subsidiaries of CNO Financial Group, Inc. ("CNO"). Bankers Life operates more than 100 offices throughout the country and employs more than 4,000 "independent sales agents," who call potential customers and offer Bankers Life insurance products. (Dckt. #2 at 4). Each Bankers Life agent is also licensed to sell products on behalf of Colonial Penn and other CNO subsidiaries. (Dckt. #2 at 4).

Lang – whose number is listed on the DNC registry – alleges that she received calls advertising Colonial Penn's life insurance services in May, June, and July of 2020. (Dckt. #11 at 4). Although Lang describes the calls as "unsolicited," Colonial Penn has taken the position that Lang "requested information about insurance products" from a website on August 7, 2019, thereby consenting to receiving phone calls from insurance providers. (Dckt. #11 at 5). By purchasing a "lead" from this website, Bankers Life was able to learn of Lang's interest in insurance products and access her contact information. Bankers Life entered the lead into its lead management system, which prompted at least two of its independent agents to call Lang and attempt to sell her Colonial Penn products. (Dckt. #11-1).

Lang issued the subpoena at issue here after learning that it was not Colonial Penn employees, but agents for both Colonial Penn and Bankers Life using Bankers Life's phone system who had called her on Colonial Penn's behalf.[1] Although the subpoena was not properly labeled as a Rule 30(b)(6) notice, the Court construes it as such and Lang does not assert it was anything else. (Dckt. #2-1). Bankers Life filed the instant motion to quash on November 23, 2021, arguing, among other things, that the subpoena "seeks irrelevant and non-existent information." (Dckt. #2 at 2). As noted in both parties' briefs, Lang also filed a document

---

[1] (Dckt. #11-1 at 1-3).

2

subpoena seeking related information. (Dckt. #2 at 2; Dckt. #11 at 13). Bankers Life similarly objected to the document subpoena, but Lang has not moved to compel Bankers Life to produce those documents. (Dckt. #2 at 2). Accordingly, only the deposition subpoena is at issue here.

## II.     LEGAL STANDARD

Rule 26(b)(1) permits the parties to obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1). Where discovery sought is "unreasonably cumulative or duplicative, or obtainable from another source that is more convenient, less burdensome, or less expensive," courts may limit the frequency or extent of discovery allowed by the rules. Fed.R.Civ.P. 26(b)(2)(C)(i); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

Rule 30(b)(6) allows a party to name a company or other organization as a deponent. "For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters." *United States v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C. 1996). Because the 30(b)(6) witness testifies on the company's behalf, he or she must be prepared to testify not only on matters within his or her personal knowledge, but on subjects that the company should reasonably know of. *See Canal Bridge Co. v. Commonwealth Edison Co.*, No. 98 C 0509, 2001 WL 817853, at *1 (N.D.Ill. July 19, 2001).

Federal Rule of Civil Procedure 45(c) governs the protection of entities subject to a subpoena. It requires the issuing court, upon timely motion, to quash or modify any subpoena that subjects an entity to undue burden. Rule 45(c)(3)(A)(iv). In making this determination, the court must weigh the relevance of the requested material against the burden of producing the material. *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 654 (7th Cir. 2002). Non-party status

3

is a significant factor in the undue burden analysis. *See Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *2 (N.D.Ill. Apr. 22, 2020); *United States ex rel. Tyson v. Amerigroup Illinois*, *Inc.*, No. 02-C-6074, 2005 WL 3111972, at *4 (N.D.Ill. Oct. 21, 2005); *Parker v. Four Seasons Hotels*, *Ltd.*, 291 F.R.D. 181, 188 (N.D.Ill. 2013). "Non-parties are afforded this consideration because they have a different set of expectations than parties . . . . While parties to a lawsuit must accept the invasive nature of discovery, non-parties experience an unwanted burden." *HTG Capital Partners*, *LLC v. Doe(s)*, No. 15-C-2129, 2015 WL 5611333, at *3 (N.D.Ill. Sept. 22, 2015) (citation and internal quotation marks omitted).

As with other discovery issues, resolving a motion to quash lies within the sound discretion of the Court. *See Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008). Furthermore, the Court is not limited to simply granting or denying the motion. Instead, it "should independently determine the proper course of discovery based upon the arguments of the parties" and "fashion a ruling appropriate for the circumstances of the case." *Gile v. United Airlines*, *Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

### III. ANALYSIS

Lang asks that the Court transfer this action to the Northern District of Florida (where she filed her complaint) or, in the alternative, compel Bankers Life to comply with her subpoena request. The Court will address each argument in turn.

**A. The Court finds no exceptional circumstances warranting a transfer of this action to the Northern District of Florida.**

As a threshold matter, the Court denies Lang's motion to transfer this action to the Northern District of Florida pursuant to Rule 45(f). "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."

4

Fed.R.Civ.P. 45(f). The Advisory Committee Notes explain that such circumstances may exist when denying transfer would disrupt the issuing court's management of the underlying litigation. As the party requesting transfer, the plaintiff bears the burden to show that exceptional circumstances exist. Fed.R.Civ.P. 45 Advisory Committee Notes. "Rule 45 imbues the discretion to transfer subpoena-related motions with the district court where compliance is required." *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-cv-0708-RFB-NJK, 2014 WL 4079555, at *4 (D.Nev. Aug. 15, 2014).

Here, Bankers Life – which has its principal place of business in this District – does not consent to transfer, and the Court finds no exceptional circumstances to warrant transfer. Although Lang argues that the court overseeing the underlying action "is very familiar with the facts of the case," the Northern District of Florida has yet to be presented with a single opposed motion in the underlying action. Furthermore, Bankers Life's substantive objections to the subpoena based on burden "require no familiarity with the underlying litigation and do not present exceptional circumstances warranting transfer." *Animal Legal Def. Fund v. U.S.F.D.A.*, No. 1:17-MC-26-PRC, 2017 WL 3580136, at *1 (N.D.Ind. Aug. 18, 2017) (denying motion to transfer third party's motion to quash subpoena); *In re Motion for Protective Order*, No. 1:16-mc-42-WTL-TAB, 2016 WL 4415008, at *2 (S.D.Ind. Aug. 18, 2016) (same). Finally, because it is so early in the discovery process (discovery is not due to be completed until March 6, 2023) and because the case has been stayed pending the resolution of this motion, *see Lang*, No. 4:21-cv-00165, (Dckt. #44), there is little risk of this decision interfering with the overseeing court's management of the case. The Court therefore finds that Bankers Life's interest in obtaining local resolution of the motion outweighs the concerns identified by Lang and will now turn to the merits of Bankers Life's motion.

**B.     Bankers Life must prepare a 30(b)(6) witness to testify regarding various relevant topics, as narrowed herein.**

Under the TCPA, the Federal Communications Commission ("FCC") imposes financial penalties on commercial telemarketers who make unsolicited calls to phone numbers listed on the DNC registry. 47 U.S.C. §227(c)(3). A person who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA may bring a private lawsuit against that entity and recover actual or statutory damages. 47 U.S.C. §227(c)(5).

Lang's 30(b)(6) deposition notice primarily seeks information regarding: (1) calls made by Bankers Life agents[2] on behalf of Colonial Penn and (2) Bankers Life's method of obtaining consent to make those calls. Lang argues that she is entitled to this information because it is relevant to her class certification efforts and Colonial Penn's affirmative defense of consent. Bankers Life seeks to quash the subpoena on the grounds that Lang's topic requests are unduly burdensome, are unreasonably cumulative, and seek irrelevant information. Although the Court agrees that many of Lang's requests are inartfully phrased, much of the information she seeks is relevant under the broad purview of Rule 26 and would not subject Bankers Life to any undue burden. Accordingly, Bankers Life must prepare a 30(b)(6) witness to testify on topics 2, 4, 5, 6, and 7 as narrowed herein and it need not prepare a witness to testify on topics 1 and 3.

**1.     Bankers Life must present a witness prepared to testify regarding the general nature of its telemarketing system (topics 2 & 4).**

Lang is pursuing this putative class action on behalf of all persons in the United States whose telephone numbers had been listed on the DNC Registry for at least thirty-one days when

---

[2] Bankers Life's "salesforce primarily consists of over 4,000 independent sales agents" and "[e]ach independent sales agent who sells Bankers Life's products is also licensed to sell products on behalf of Colonial Penn." (Dckt. #2-2 at 3,4).

6

they received multiple telemarketing calls from, or on behalf of, Colonial Penn within a twelve-month period within the four years preceding the filing of Lang's Complaint through trial. (Dckt. #11 at 5). Topics 2 and 4 of Lang's deposition notice seek information that would help her identify potential class members:

> **Topic 2:** Bankers Life Insurance Company's knowledge of and participation in calls for purposes of marketing [Colonial Penn's] services, including when such calls were made, who made such calls, any leads provided for making such calls, any training provided regarding making such calls, any equipment used to make such calls, and the results of such calls.
>
> **Topic 4:** The Process for engaging in each outbound call sent by you or your agents to leads that you shared with the [Colonial Penn] or CNO. This includes, but is not limited to:
>
> A. the time frame those calls were made
> B. the caller IDs for such calls
> C. where the telephone number or lead information called from
> D. the status of the called party's consent to be called or preexisting business relationship with your company
> E. the location and dialing records used.

(Dckt. #2-1).

Bankers Life does not argue that the information sought is irrelevant to Lang's claim. Instead, it asserts that its call records only reveal what number was dialed, the time and date of the call, the duration of the call, and which sales agent was logged into the phone system when the call was made. (Dckt. #2 at 7). The system does not record which company the agent was calling on behalf of, or for what purpose (whether it was a cold call, a response to a request for information, or a call to an existing policyholder). Relying on the imprecise nature of its own recording system, Bankers Life essentially argues that, because it would be "impossible" to ever identify the information that could reveal the members of Lang's putative class – i.e., every call its agents made (1) on behalf of Colonial Penn (2) to members of the DNC Registry (3) without

7

their consent (4) during the class period – the company should be excused from proffering any testimony whatsoever.

Inexplicably, Lang's response almost entirely ignores this argument, which makes up the bulk of Bankers Life's motion to quash. Instead, Lang asserts that a call log identifying "other consumers whose telephone numbers were obtained in a similar manner and were called under similar circumstances" would be relevant to her eventual motion for class certification – a fact Bankers Life never disputes. Lang's response also fails to clarify the degree of detail she hopes to learn through her 30(b)(6) deposition. On the one hand, she suggests that Topic 4 seeks a "call list," (Dckt. #11 at 10); while on the other, she states that her aim is to understand "the *nature* of [Bankers Life's] records before determining how to address Bankers Life's objections to [Lang's] document subpoena." (Dckt. #11 at 13) (emphasis added). This latter statement implies that Lang currently seeks only general information, which will enable her to better tailor forthcoming requests for specific call records.

Again, courts will modify or quash a subpoena that subjects a party to undue burden. Fed.R.Civ.P. 45(c)(3)(A). The moving party bears the burden of demonstrating that compliance would be unduly burdensome. *AF Holding LLC v. Doe*, No. 12-C-4222, 2012 WL 5520861, at *1 (N.D.Ill. Nov. 13, 2012); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 1:11-cv-1108-SEB-TAB, 2014 WL 12756174, at *1 (S.D.Ind. Sept. 12, 2014). Here, Bankers Life argues that, in order to identify which calls were made for the purpose of marketing Colonial Penn's services, it would first have to "individually contact each of its 100+ offices to obtain the office's monthly call logs for a four-year period and retain, at a significant cost, a third-party vendor to assist with pulling the logs." (Dckt. #2 at 8). Bankers Life would then need to hire someone to cross-reference that list against the DNC registry. Finally, to determine which of

8

those calls were made on behalf of Colonial Penn, "Bankers Life would have to interview each current and former independent sales agent who called a DNC number." (*Id.* at 13). The sales agents, in turn, would have to remember the purpose of each call and whether it was made on behalf of Colonial Penn. Even then, Bankers Life notes, the resulting list would include calls with people who had consented to being contacted and, therefore, fall outside of the putative class.

Based on these considerations, the Court agrees that preparing a witness to testify regarding specific calls made by Bankers Life agents (other than those made to Lang herself) would be unduly burdensome at present. Accordingly, the Court will narrow the scope of the deposition to preclude such questioning. This limitation is appropriate for four reasons.

First, deposing a witness regarding specific calls other than those pertaining to Lang is premature when the question of what – if any – call logs Bankers Life must produce has not yet been litigated.[3] Second, the topic is premature because Colonial Penn has raised the affirmative defense of consent. (Dckt. #11 at 8). If Colonial Penn successfully produces evidence showing that Lang consented to the calls at issue, there is a meaningful possibility that her claims will be extinguished altogether, leaving her without a basis to seek records related to putative class claims. *See, e.g. Mackey v. IDT Energy, Inc.*, 19 Misc. 29 (PAE), 2019 WL 2004280, at *7 (S.D.N.Y. May 7, 2019) (finding that a third party to a TCPA case needed to produce only documents relevant to the claims brought by the plaintiff on his own behalf when evidence suggested that the defendant might move for summary judgment based on the plaintiff's consent). Third, Bankers Life's non-party status entitles it to special consideration when assessing undue burden for the purpose of a Rule 45 motion. *Davis v. Carmel Clay Schools*, 286

---

[3] Lang suggests that she will file a motion to compel such documents after the 30(b)(6) deposition. (Dckt. #11 at 13).

F.R.D. 411, 413 (S.D.Ind. 2012). Fourth, by failing to respond to Bankers Life's arguments regarding undue burden, Lang has waived any argument that preparing a witness to testify about specific calls would not be unduly burdensome. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

For all of these reasons, Bankers Life need only prepare a witness to testify about the *general circumstances* under which its independent sales agents make calls on behalf of Colonial Penn. This information will allow Lang to better understand Bankers Life's system and better tailor future discovery requests related to class certification. The information is also reasonably available to Bankers Life. Indeed, much of it was outlined in the motion to quash itself, (*see* Dckt. #2-2), and the only specific calls with which its witness must be familiar are those made by Bankers Life employees to Lang herself.

In addition, this means with regard to Topic 2 that Bankers Life must prepare a witness to testify about the following information: (1) when Bankers Life sales agents began making calls on behalf of Colonial Penn; (2) which Bankers Life sales agents are authorized to make such calls; (3) how Bankers Life obtains "leads" for calls regarding Colonial Penn; (4) how the callers are trained; (5) what equipment and technology Bankers Life agents use to make calls; and (6) how the results of calls are recorded. With regard to Topic 4, Bankers Life must prepare a witness to testify regarding: (1) when Bankers Life began obtaining leads on behalf of Colonial Penn; (2) what caller ID appears on calls from Bankers Life sales agents; (3) how Bankers Life sales agents access phone numbers and lead information; (4) how Bankers Life tracks individuals who have consented to calls or have a preexisting business relationship with the company; and (5) the type of location and dialing records that are used by Bankers Life agents to make calls on behalf of Colonial Penn.

> **2. Bankers Life must present a witness prepared to testify about how the company identifies parties who have consented to receiving telemarketing calls (topics 5 and 6).**

Topics 5 and 6 of Lang's deposition notice seek information related to Colonial Penn's assertion that Lang consented to receive calls marketing its insurance services:

> **Topic 5:** To the extent you claim that your company, [Colonial Penn] or CNO obtained permission for any of the calls made, discuss the existence of:
>
> A. Any signed writings evidencing such permission
>
> B. As it relates to any website visits that you assert are being used in place of signed writings:
>
> i. Any clear and conspicuous statement that informed consumers of their right to withdraw their consent to receive telemarketing calls;
>
> ii. Any clear and conspicuous statement that informed consumers of the procedures they must use to withdraw consent, and the procedures they may use to update their contact information that was used as a basis for any alleged consent to make telemarketing calls to them.
>
> **Topic 6:** Regarding any claim that any telephone number sold to [Colonial Penn] had provided their prior express written consent to receive telemarketing calls related to you, CNO or [Colonial Penn's] goods or services through a website, testify regarding the existence of any documents that identify those website(s) and the specific page(s) on those website(s) that you claim constitute consent or permission.

(Dckt. #2-1).

Bankers Life once again argues that providing this information would be unduly burdensome because it does not track on behalf of which company each call is made or whether a call is made for telemarketing or some other purpose. Again, this argument ignores the highly relevant information sought through these requests that can be provided without undue burden. Indeed, Topics 5 and 6 seek much more generalized information than Topics 2 and 4. Primarily, Lang seeks to learn about the *process* through which individuals consent to being contacted by

Bankers Life sales agents – whether through signed writings or website visits. Bankers Life shall prepare a deponent who is prepared in good faith to respond to questions related to these topics.

That said, because Topics 5 and 6 reference Bankers Life's "claims" and "assertions," the Court reiterates that Bankers Life is not a party to this action. It has not made any "claims" over the course of this litigation, nor can it account for any claims made by Colonial Penn, despite their relationship as co-subsidiaries of CNO. To account for the requests' references to claims made by Bankers Life and Colonial Penn, the Court narrows Topic 5 to information regarding: (1) Bankers Life's methods of obtaining consent for calls made by its sales agents; (2) the existence of any writings evidencing such permission; and (3) when Bankers Life obtains consent through individuals accessing a website, what statements inform consumers of their right to withdraw that consent and the procedures they must use to do so. The Court similarly narrows Topic 6 to include information regarding: (1) the process through which Bankers Life purchases telephone numbers; and (2) whether and how it ensures that the individual owners of the purchased numbers have consented to receiving telemarketing calls related to Bankers Life, Colonial Penn, or CNO.

### 4. Bankers Life need not prepare its 30(b)(6) witness to testify regarding Topics 1, 3, or 7.

For the following reasons, the remaining topics outlined in Lang's 30(b)(6) deposition notice are overbroad and unreasonably cumulative. Bankers Life may consider them stricken from the deposition notice and need not prepare a witness to testify on the subjects they describe.

Topic 1 of Lang's deposition notice seeks information on "[t]he general nature and scope of Banker[s] Life Insurance Company business and/or services. This subject includes, but is not limited to, [Bankers Life's] business activities, daily operations, portfolio of services offered, and business model." (Dckt. #2-1 at 5). Bankers Life argues that this request is overbroad and

would require an undue amount of witness preparation because "Bankers Life's business activities, daily operations, portfolio of services offered, and business model have no bearing on whether Colonial Penn violated the TCPA." (Dckt. #2 at 14). Lang responds that the topic "is intended to set a foundation for understanding Bankers Life's responses: the general nature and scope of Banker[s] Life Insurance Company business and/or services," but fails to respond to Bankers Life's overbreadth argument. (Dckt. #11 at 12).

The Court agrees with Bankers Life that this topic fails to satisfy the "reasonable particularity" standard of Rule 30(b)(6). Topic 1 encompasses a tremendous amount of information, most of which would be irrelevant to Lang's claims. Furthermore, Lang's use of the language, "includes, but is not limited to," almost necessitates an overbreadth finding, as "stating that the inquiry may extend beyond the enumerated topics defeats the purpose of having any topics at all." *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005) (striking the phrase "including but not limited to" from all 30(b)(6) topics). Because Lang both failed to identify with particularity the information sought and failed to adequately respond to Bankers Life's objections, the Court strikes Topic 1 from the deposition notice.

Topic 3 seeks information regarding Bankers Life's relationship with Colonial Penn, "including but not limited to" what services the companies provide one another, Colonial Penn's access to Bankers Life's computer systems, and payments Bankers Life makes to Colonial Penn. Bankers Life argues that this request is unreasonably cumulative as it seeks information that Colonial Penn, the defendant, can provide. The Court agrees.

"Before seeking discovery from a non-party . . . a litigant must first attempt to obtain the discovery from another party in the lawsuit if it appears that the party would have the information that the litigant seeks." *Little*, 2020 WL 1939358, at *7. It follows that when "[a]

13

non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative." *Tresóna Multimedia*, *LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *3 (N.D.Ill. Aug. 17, 2015). Again, Lang failed to respond to this objection. Because Colonial Penn can provide Lang with the information she seeks through Topic 3 and because Lang waived any argument to the contrary, Bankers Life need not prepare a witness to testify on its relationship with Colonial Penn. *See Insituform Techs.*, *Inc. v. Cat Cont., Inc.*, 914 F.Supp. 286, 287 (N.D.Ill. 1996) (finding third-party subpoena to be "unreasonably cumulative" where it sought information regarding the third party's relationship with one of the defendants).

Finally, Topic 7 seeks information regarding "[a]ll correspondence and discussion with any third party other than your attorney regarding this litigation." Although Lang argues that the relevance of this information is "self-evident, as by its nature it relates only to the subject matter of the litigation," (Dckt. #11 at 12), the Court agrees with Bankers Life that the request is overbroad. *See Mackey*, 2019 WL 2004280, at *7 (describing an identical request as "problematic," "completely untailored," and likely to "pick up documents that do not bear on liability or damages issues" in TCPA case). Furthermore, to the extent that Topic 7 concerns relevant information that pertains to Lang's claims or Colonial Penn's defenses – i.e., correspondence and evidence of discussions between Bankers Life and Colonial Penn regarding this litigation – Lang must first attempt to retrieve this information from Colonial Penn, a party to this litigation to which these communications are "readily available." *Little*, 2020 WL 1939358, at *7; *Tresóna Multimedia*, 2015 WL 4911093, at *3.

**CONCLUSION**

For the foregoing reasons, the Court will grant Bankers Life's motion to quash in part, deny it in part, and modify the scope of the subpoena as specified herein. Subject to any orders by the Northern District of Florida modifying this schedule, the parties shall meet and confer how to proceed with the deposition of Bankers Life's corporate representative, which shall be conducted before November 7, 2022.

**Dated: September 26, 2022**

 **Jeffrey I. Cummings**
 **United States Magistrate Judge**